**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEATHER MCMANUS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BUCKEYE PARTNERS, L.P., CLARK C. SMITH, PIETER BAKKER, BARBARA M. BAUMANN, BARBARA J. DUGANIER, JOSEPH A. LASALA, JR., MARK C. MCKINLEY, LARRY C. PAYNE, OLIVER G. RICHARD, III, FRANK S. SOWINSKI, MARTIN A. WHITE and BUCKEYE GP, LLC,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Heather McManus ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Buckeye Partners, L.P. ("Buckeye" or the "Partnership") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, unitholder communications, and postings on the Partnership's website concerning the Partnership's public statements; and (d) review of other publicly available information concerning Buckeye and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public unitholders of Buckeye against the Partnership's general partner, Buckeye GP, LLC ("Buckeye GP") and the Partnership's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Partnership to IFM Investors ("IFM," or "Parent") (the "Proposed Transaction") through IFM's wholly owned subsidiary IFM Global Infrastructure Fund ("Merger Sub").

2.      On May 10, 2019, Buckeye entered into an Agreement and Plan of Merger (the "Merger Agreement") with IFM, whereby IFM will acquire all outstanding units of Buckeye for $41.50 per unit in an all-cash transaction valued at approximately $10.3 billion (including assumed debt).

3.      On June 7, 2019, in order to convince Buckeye's unitholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Buckeye and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Buckeye unitholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits unitholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   Additionally, the Partnership's units trade on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Buckeye units.

9.      Defendant Buckeye is a Delaware corporation with its principal executive offices located at One Greenway Plaza, Suite 600, Houston, Texas 77046.  The Partnership's units are traded on the NYSE under the symbol "BPL."

10.      Defendant Clark C. Smith ("Smith") is and has been Buckeye GP's Chief Executive Officer and a director at all times during the relevant time period.

11.      Defendant Pieter Bakker ("Bakker") is and has been a director of Buckeye GP at all times during the relevant time period.

12.     Defendant Barbara M. Baumann ("Baumann") is and has been a director of Buckeye GP at all times during the relevant time period.

13.     Defendant Barbara J. Duganier ("Duganier") is and has been a director of Buckeye GP at all times during the relevant time period.

14.     Defendant Joseph A. LaSala, Jr. ("LaSala") is and has been a director of Buckeye GP at all times during the relevant time period.

15.     Defendant Mark C. McKinley ("McKinley") is and has been a director of Buckeye GP at all times during the relevant time period.

16.     Defendant Larry C. Payne ("Payne") is and has been a director of Buckeye GP at all times during the relevant time period.

17.     Defendant Oliver G. Richard, III ("Richard") is and has been a director of Buckeye GP at all times during the relevant time period.

18.     Defendant Frank S. Sowinski ("Sowinski") is and has been a director of Buckeye GP at all times during the relevant time period.

19.     Defendant Martin A. White ("White") is and has been a director of Buckeye GP at all times during the relevant time period.

20.     Defendants Smith, Bakker, Baumann, Duganier, LaSala, McKinley, Payne, Richard, Sowinski, and White are collectively referred to herein as the "Individual Defendants."

21.     Defendant Buckeye GP is the Partnership's general partner.  Buckeye GP is a Delaware limited liability company.

22.     The Individual Defendants, along with Defendants Buckeye and Buckeye GP, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public unitholders of Buckeye (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. As of June 18, 2019, there were approximately 153,918,000 Buckeye units outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.    Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members

of the Class which would establish incompatible standards of conduct for the party opposing the Class.

        f.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

    25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Partnership

    26.    Buckeye is a publicly traded master limited partnership which owns and operates a diversified global network of integrated assets providing midstream logistic solutions, primarily consisting of the transportation, storage, processing and marketing of liquid petroleum products.

### The Partnership Announces the Proposed Transaction

    27.    On May 10, 2019, Buckeye jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

**Buckeye Partners, L.P. Agrees to be Acquired by IFM Investors for $41.50 per common unit**

**IFM Expands Midstream Energy Infrastructure Portfolio with Addition of Buckeye**

**Transaction valued at $10.3 billion enterprise value and $6.5 billion equity value**

HOUSTON and NEW YORK – May 10, 2019 – IFM Investors and Buckeye Partners, L.P. (NYSE: BPL) today announced a definitive agreement ("Agreement") under which the IFM Global Infrastructure Fund will acquire all of the outstanding public common units of Buckeye for $41.50 per common unit. The all-cash transaction is valued at $10.3 billion enterprise value and $6.5 billion

equity value. The acquisition price represents a 27.5% premium to Buckeye's closing unit price on May 9, 2019 and a 31.9% premium to Buckeye's volume-weighted average unit price since November 1, 2018, which is the last trading day prior to Buckeye's announcement of certain strategic actions. Buckeye's Board of Directors unanimously approved the proposed transaction with IFM. The closing of the merger will be subject to approval of a majority of the Buckeye unitholders, certain regulatory approvals and other customary closing conditions.

Buckeye owns and operates one of the largest diversified networks of integrated midstream assets, including 6,000 miles of pipeline with over 100 delivery locations and 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels. Its network of marine terminals is located primarily in the East Coast and Gulf Coast regions of the United States, as well as in the Caribbean.

IFM is a pioneer and leader in infrastructure investing on behalf of institutional investors globally, with a 23-year track record of success. IFM has $90 billion of assets under management, including $39.1 billion in infrastructure, which it manages on behalf of more than 370 institutional investors, and takes a longterm approach to investing, with no pre-determined time divestiture horizon. IFM targets core infrastructure in developed markets and currently has interests in 32 investments across North America, Australia and Europe, including several midstream assets.

"This acquisition is aligned with IFM's focus on investing in high quality, essential infrastructure assets that underpin the economies in which they operate," said Julio Garcia, Head of Infrastructure, North America of IFM.

"We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella," said Jamie Cemm, Executive Director of IFM. "The proposed acquisition of Buckeye is a complementary addition to IFM's substantial investments in energy infrastructure across North America and globally. We look forward to supporting the continuing growth of the business."

"Buckeye's Board of Directors recently reviewed strategic options for the business and determined that IFM's proposal to acquire Buckeye is in the best interest of Buckeye," said Clark C. Smith, Chairman, President and Chief Executive Officer of Buckeye. "The proposed transaction will provide immediate and enhanced value for our unitholders with an attractive premium that accelerates long-term returns and represents the underlying value of our business. In addition, the proposed transaction will provide Buckeye with superior access to capital to execute on its long-term business strategy. We look forward to this next chapter in Buckeye's 133-year story."

**The Proposed Transaction is Unfair to Unitholders**

28.    The Proposed Transaction, as currently contemplated, is unfair to the Partnership's unitholders.

29.    When entering into the Merger Agreement, the Partnership's Board agreed to preclusive deal protection devices that ensure that no competing offers for Buckeye will be forthcoming.

30.    Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-shop provision that prevents the Partnership from negotiating with or providing confidential information to potential acquirors, except in certain circumstances; (ii) an matching rights provision that requires the Partnership to keep IFM informed of competing proposals and allow IFM the right to match such proposal in the event one emerges; and (iii) a provision that requires the Partnership to pay IFM a termination fee of $130 million if the Partnership agrees to a competing proposal.

31.    These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives.    Given that the preclusive deal protection provisions in the agreement impede a superior suitor from emerging, it is imperative that the Partnership's unitholders receive all material information necessary for them to make an informed decision as to whether to vote their units in favor of the Proposed Transaction.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

32.    On June 7, 2019, the Partnership filed the Proxy Statement with the SEC.    The Proxy Statement recommends that the Partnership's unitholders vote in favor of the Proposed Transaction.

33.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Management's Financial Projections**

34.     The Proxy Statement contains projections prepared by Buckeye's management concerning the Proposed Transaction, but fails to provide material information concerning such.

35.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

36.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

37.     Specifically, with regard to the "2018 Management Case" projections, the "Updated 2018 Management Case" projections, and the "2019 Management Case" projections, the Proxy Statement fails to disclose the material line items for Adjusted EBITDA for each respective projection.

38.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Wells Fargo's Financial Opinion

39.     The Proxy Statement contains the financial analyses and opinion of Wells Fargo Securities, LLC ("Wells Fargo") concerning the Proposed Transaction, but fails to provide material information concerning such.

40.     With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used in Wells Fargo's calculation of a discount rate range of 7.84% to 8.34%; and (ii) the inputs and assumptions used in Wells Fargo's calculation of the Partnership's perpetuity growth rates of 1.00% to 2.00%.

41.     With respect to Wells Fargo's *Discounted Distributions Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used in Wells Fargo's calculation of the cost of equity range of 9.80% to 10.30%; and (ii) the inputs and assumptions used in Wells Fargo's calculation of the Partnership's perpetuity growth rates of 0.00% to 2.00%.

42.    With regard to Wells Fargo's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) Wells Fargo's reasoning for choosing only three precedent transactions to compare; (ii) the total value of each transaction selected by Wells Fargo; and (iii) the date each transaction selected by Wells Fargo closed.

43.    With respect to Wells Fargo's *Selected Public MLPs Analysis*, the Proxy Statement fails to disclose Wells Fargo's reasoning for choosing only four MLPs to compare.

44.    Lastly, the Proxy Statement fails to disclose any financial analysis, or any fairness opinion whatsoever, from Intrepid, despite the fact that the Proxy Statement reveals that Intrepid was retained by the Partnership to function as a financial advisor concerning the Proposed Transaction.

45.    When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a company and allows unitholders to better understand the financial analyses performed by the Partnership's financial advisor in support of its fairness opinion.

46.    Without the above described information, the Partnership's unitholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

47.    The Proxy Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

48.    Specifically, the Proxy Statement fails to disclose: (i) whether there are any specific standstill restrictions emerging out of the terms of any of the non-disclosure agreements with any interested third party, and if the terms of such agreements included "don't-ask, don't-waive" provisions; (ii) the nature of any differences that exist between the various non-disclosure agreements entered into between Buckeye and any interested third parties; (iii) why Wells Fargo and Intrepid only contacted two potentially interested third parties during their market check in connection with the Proposed Transaction; (iv) the reasons why the Partnership failed to create a committee of independent board members to run the sales process of the Proposed Transaction; and (v) the reason for the Partnership retained two separate financial advisors.

49.    The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as unitholders will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction without proper disclosures.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)**
**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

50.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.    Defendants have issued the Proxy Statement with the intention of soliciting unitholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Partnership.

54.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

55.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Partnership's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Partnership's financial projections.

58.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Buckeye within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Buckeye, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64.     In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

67.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 26, 2019                              Respectfully submitted,


                                                  By: */s/ Joshua M. Lifshitz*
                                                  Joshua M. Lifshitz
                                                  Email: jml@jlclasslaw.com
                                                  **LIFSHITZ & MILLER LLP**
                                                  821 Franklin Avenue, Suite 209
                                                  Garden City, New York 11530
                                                  Telephone: (516) 493-9780
                                                  Facsimile: (516) 280-7376

                                                  *Attorneys for Plaintiff*

## **CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Heather McManus, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in bpl securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 06/14/2019

Signature

Exhibit A

My transactions in Buckeye Partners, L.P. (BPL) securities that are the subject of this litigation during the class period set forth in the complaint are as follows:

| Date | Action | Symbol | Quantity | Price |
|------|--------|--------|----------|-------|
| 6/7/19 | Sell | BPL | 2000 | $40.75 |
| 5/28/19 | Cash Dividend | BPL | | |
| 5/20/19 | Sell | BPL | 1800 | $40.96 |
| 5/20/19 | Sell | BPL | 1000 | $40.96 |
| 5/20/19 | Sell | BPL | 400 | $40.96 |
| 5/20/19 | Sell | BPL | 400 | $40.96 |
| 5/20/19 | Sell | BPL | 100 | $40.96 |
| 5/20/19 | Sell | BPL | 300 | $40.96 |
| 5/20/19 | Sell | BPL | 1000 | $40.96 |
| 5/17/19 | Sell | BPL | 89 | $40.97 |
| 5/17/19 | Sell | BPL | 4 | $40.97 |
| 5/17/19 | Sell | BPL | 7 | $40.97 |
| 5/17/19 | Sell | BPL | 900 | $40.97 |
| 5/17/19 | Sell | BPL | 262 | $40.97 |
| 5/17/19 | Sell | BPL | 256 | $40.97 |
| 5/17/19 | Sell | BPL | 122 | $40.97 |
| 5/17/19 | Sell | BPL | 100 | $40.97 |
| 5/17/19 | Sell | BPL | 380 | $40.97 |
| 5/17/19 | Sell | BPL | 200 | $40.97 |
| 5/17/19 | Sell | BPL | 180 | $40.97 |
| 5/17/19 | Sell | BPL | 2500 | $41.02 |
| 5/16/19 | Buy | BPL | 12000 | $41.76 |
| 5/9/19 | Buy | BPL | 4500 | $33.25 |
| 4/22/19 | Buy | BPL | 1100 | $33.55 |
| 4/22/19 | Buy | BPL | 400 | $33.56 |
| 4/17/19 | Sell | BPL | 1000 | $34.00 |
| 4/3/19 | Buy | BPL | 5000 | $34.25 |
| 3/13/19 | Sell | BPL | 4290 | $33.93 |
| 3/13/19 | Sell | BPL | 500 | $33.94 |
| 3/13/19 | Sell | BPL | 2600 | $33.93 |
| 3/13/19 | Sell | BPL | 510 | $33.95 |
| 3/13/19 | Sell | BPL | 100 | $33.96 |
| 3/13/19 | Sell | BPL | 500 | $33.95 |
| 3/13/19 | Sell | BPL | 400 | $33.95 |
| 3/13/19 | Sell | BPL | 600 | $33.95 |
| 3/13/19 | Sell | BPL | 300 | $33.96 |
| 3/13/19 | Sell | BPL | 200 | $33.96 |
| 2/26/19 | Cash Dividend | BPL | | |
| 2/20/19 | Buy | BPL | 4500 | $33.14 |
| 2/20/19 | Buy | BPL | 5500 | $33.15 |
| 2/19/19 | Sell | BPL | 9048 | $33.16 |

| | | | | |
|---|---|---|---|---|
| 2/19/19 | Sell | BPL | 100 | $33.17 |
| 2/19/19 | Sell | BPL | 3448 | $33.16 |
| 2/19/19 | Sell | BPL | 1500 | $33.17 |
| 2/19/19 | Sell | BPL | 2100 | $33.18 |
| 2/19/19 | Sell | BPL | 2979 | $33.19 |
| 2/19/19 | Sell | BPL | 825 | $33.20 |
| 2/19/19 | Buy | BPL | 5266 | $33.47 |
| 2/19/19 | Buy | BPL | 1306 | $33.46 |
| 2/19/19 | Buy | BPL | 200 | $33.45 |
| 2/19/19 | Buy | BPL | 725 | $33.44 |
| 2/19/19 | Buy | BPL | 800 | $33.43 |
| 2/19/19 | Buy | BPL | 500 | $33.42 |
| 2/19/19 | Buy | BPL | 600 | $33.41 |
| 2/19/19 | Buy | BPL | 800 | $33.40 |
| 2/19/19 | Buy | BPL | 1000 | $33.39 |
| 2/19/19 | Buy | BPL | 691 | $33.32 |
| 2/19/19 | Buy | BPL | 353 | $33.38 |
| 2/19/19 | Buy | BPL | 300 | $33.31 |
| 2/19/19 | Buy | BPL | 600 | $33.37 |
| 2/19/19 | Buy | BPL | 350 | $33.35 |
| 2/19/19 | Buy | BPL | 800 | $33.34 |
| 2/19/19 | Buy | BPL | 100 | $33.33 |
| 2/19/19 | Buy | BPL | 609 | $33.30 |
| 2/19/19 | Sell | BPL | 486 | $32.85 |
| 2/19/19 | Sell | BPL | 385 | $32.86 |
| 2/19/19 | Sell | BPL | 715 | $32.87 |
| 2/19/19 | Sell | BPL | 200 | $32.86 |
| 2/19/19 | Sell | BPL | 377 | $32.87 |
| 2/19/19 | Sell | BPL | 200 | $32.88 |
| 2/19/19 | Sell | BPL | 1237 | $32.87 |
| 2/19/19 | Sell | BPL | 10700 | $32.85 |
| 2/14/19 | Buy | BPL | 300 | $32.95 |
| 2/14/19 | Buy | BPL | 7776 | $32.96 |
| 2/14/19 | Buy | BPL | 2500 | $32.95 |
| 2/14/19 | Buy | BPL | 1400 | $32.94 |
| 2/14/19 | Buy | BPL | 135 | $32.93 |
| 2/14/19 | Buy | BPL | 1000 | $32.92 |
| 2/14/19 | Buy | BPL | 1000 | $32.92 |
| 2/14/19 | Buy | BPL | 189 | $32.92 |
| 2/14/19 | Sell | BPL | 14000 | $32.90 |
| 2/14/19 | Buy | BPL | 100 | $32.71 |
| 2/14/19 | Buy | BPL | 600 | $32.70 |
| 2/14/19 | Buy | BPL | 4773 | $32.73 |

| | | | |
|---|---|---|---|
| 2/14/19 Buy | BPL | 319 | $32.72 |
| 2/14/19 Buy | BPL | 1000 | $32.72 |
| 2/14/19 Buy | BPL | 400 | $32.72 |
| 2/14/19 Buy | BPL | 100 | $32.71 |
| 2/14/19 Buy | BPL | 100 | $32.70 |
| 2/14/19 Buy | BPL | 27 | $32.66 |
| 2/14/19 Buy | BPL | 3100 | $32.72 |
| 2/14/19 Buy | BPL | 200 | $32.71 |
| 2/14/19 Buy | BPL | 300 | $32.70 |
| 2/14/19 Buy | BPL | 200 | $32.71 |
| 2/14/19 Buy | BPL | 100 | $32.66 |
| 2/14/19 Buy | BPL | 100 | $32.70 |
| 2/14/19 Buy | BPL | 100 | $32.71 |
| 2/14/19 Buy | BPL | 700 | $32.71 |
| 2/14/19 Buy | BPL | 100 | $32.70 |
| 2/14/19 Buy | BPL | 27 | $32.66 |
| 2/14/19 Buy | BPL | 700 | $32.70 |
| 2/14/19 Buy | BPL | 54 | $32.66 |
| 2/14/19 Buy | BPL | 500 | $32.69 |
| 2/14/19 Buy | BPL | 100 | $32.68 |
| 2/14/19 Buy | BPL | 100 | $32.67 |
| 2/14/19 Buy | BPL | 200 | $32.66 |
| 2/14/19 Sell | BPL | 3926 | $32.53 |
| 2/14/19 Sell | BPL | 171 | $32.54 |
| 2/14/19 Sell | BPL | 2321 | $32.56 |
| 2/14/19 Sell | BPL | 1619 | $32.58 |
| 2/14/19 Sell | BPL | 100 | $32.60 |
| 2/14/19 Sell | BPL | 277 | $32.62 |
| 2/14/19 Sell | BPL | 1100 | $32.63 |
| 2/14/19 Sell | BPL | 300 | $32.65 |
| 2/14/19 Sell | BPL | 567 | $32.64 |
| 2/14/19 Sell | BPL | 1100 | $32.65 |
| 2/14/19 Sell | BPL | 586 | $32.67 |
| 2/14/19 Sell | BPL | 1033 | $32.68 |
| 2/14/19 Sell | BPL | 900 | $32.69 |
| 2/13/19 Buy | BPL | 100 | $32.54 |
| 2/13/19 Buy | BPL | 800 | $32.52 |
| 2/13/19 Buy | BPL | 200 | $32.51 |
| 2/13/19 Buy | BPL | 9956 | $32.50 |
| 2/13/19 Buy | BPL | 200 | $32.48 |
| 2/13/19 Buy | BPL | 100 | $32.47 |
| 2/13/19 Buy | BPL | 300 | $32.48 |
| 2/13/19 Buy | BPL | 100 | $32.46 |

| Date | Transaction | Symbol | Quantity | Price |
|---|---|---|---|---|
| 2/13/19 | Buy | BPL | 2219 | $32.55 |
| 2/13/19 | Buy | BPL | 25 | $32.53 |
| 11/20/18 | Cash Dividend | BPL | | |
| 9/28/18 | Buy | BPL | 1500 | $35.98 |
| 9/28/18 | Buy | BPL | 1000 | $35.87 |
| 9/21/18 | Buy | BPL | 1308 | $36.11 |
| 9/21/18 | Buy | BPL | 92 | $36.11 |
| 9/13/18 | Buy | BPL | 300 | $38.13 |
| 8/28/18 | Buy | BPL | 500 | $36.50 |
| 8/20/18 | Cash Dividend | BPL | | |
| 5/21/18 | Cash Dividend | BPL | | |
| 4/2/18 | Buy | BPL | 300 | $37.13 |
| 3/27/18 | Sell | BPL | 317 | $35.53 |
| 2/27/18 | Cash Dividend | BPL | | |
| 11/20/17 | Cash Dividend | BPL | | |
| 8/21/17 | Cash Dividend | BPL | | |
| 5/22/17 | Cash Dividend | BPL | | |
| 5/8/17 | Buy | BPL | 50 | $66.87 |
| 5/8/17 | Buy | BPL | 100 | $66.87 |
| 2/28/17 | Cash Dividend | BPL | | |
| 1/4/17 | Buy | BPL | 167 | $67.63 |